1
2
3
4

HOLLAND & KNIGHT LLP
Matthew P. Vafidis (SBN 103578)
50 California Street, 28th Floor
San Francisco, CA  94111
Telephone:  (415) 743-6900
Facsimile:  (415 743-6910)
Email:  matthew.vafidis@hklaw.com

5
6

Attorneys for CA, INC.
d/b/a CA TECHNOLOGIES

7

8

## UNITED STATES DISTRICT COURT

9

## NORTHERN DISTRICT OF CALIFORNIA

10

## SAN FRANCISCO

11

12
13

APPDYNAMICS, INC., JYOTI BANSAL,
AND BHASKAR SUNKARA

Plaintiffs

14

vs.

15

CA, INC. D/B/A CA TECHNOLOGIES,

16

Defendant

17

Case No. 3:14-cv-01945-VC

**CA, INC.'S ANSWER TO THE
FIRST AMENDED COMPLAINT
AND COUNTERCLAIM**

18

19      Defendant CA, INC. d/b/a CA TECHNOLOGIES ("CA") answers and asserts its

20  counterclaim, with jury demand, in response to the First Amended Complaint ("Complaint") of

21  Plaintiffs APPDYNAMICS, INC. ("AppDynamics"), JYOTI BANSAL ("Bansal"), and

22  BHASKAR SUNKARA ("Sunkara") (collectively, "Plaintiffs"), as follows:

23      (For convenience, CA repeats the headings employed by Plaintiffs in the Complaint;   CA

24  does not admit or concede any allegation in the Complaint by so doing.)

25  //

26  //

27  //

28  //

## INTRODUCTION

1. Responding to Paragraph 1 of the Complaint, CA admits that Bansal is AppDynamics' founder and CEO and Sunkara is AppDynamics' Chief Technology Officer and Senior Vice-President of Product Management. CA denies that those are Sunkara's only roles with AppDynamics, as he is also a co-founder of AppDynamics. CA lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph, and therefore denies them.

2. Responding to Paragraph 2 of the Complaint, CA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore denies them.

3. Responding to Paragraph 3 of the Complaint, CA admits that it is a direct competitor of AppDynamics. CA denies that it has sought to slow any supposed success of AppDynamics by threatening to bring claims based on California law. CA admits that it meritoriously brings claims in this pleading against Bansal and Sunkara for, at least, breach of their employment agreements; misappropriation of CA's trade secrets; aiding and abetting a breach of fiduciary duty; breach of loyalty; interference with prospective economic advantage; interference with existing contracts; unfair competition and unfair business practices; unjust enrichment; conversion; construction trust; replevin; and breach of the implied covenant of good faith and fair dealing. Further answering, CA denies that it avers or has averred that its claims derive entirely from work that Bansal and Sunkara did on AppDynamics' source code while employed at CA.

4. Responding to Paragraph 4 of the Complaint, CA denies the allegations in this paragraph.

## PARTIES

5. Responding to Paragraph 5 of the Complaint, CA admits that Bansal is the Chief Executive Officer of AppDynamics. CA lacks knowledge or information sufficient to form a belief as to the residency of Bansal, and therefore denies this allegation.

//

1      6.      Responding to Paragraph 6 of the Complaint, CA admits that Sunkara is the Chief

2    Technology Officer and Senior Vice President of Product Management of AppDynamics.  CA

3    denies that those are Sunkara's only roles with AppDynamics, as he is also a co-founder of

4    AppDynamics.  CA lacks knowledge or information sufficient to form a belief as to the

5    residency of Sunkara, and therefore denies this allegation.

6      7.      Responding to Paragraph 7 of the Complaint, CA lacks knowledge or information

7    sufficient to form a belief as to AppDynamics' principal place of business, and therefore denies

8    this allegation.  CA admits that AppDynamics is a corporation organized under the laws of the

9    State of Delaware.  CA admits that AppDynamics develops tools for Application Performance

10   Monitoring, which allows companies to track and monitor the status of their network operations

11   and web applications.

12     8.      Responding to Paragraph 8 of the Complaint, CA admits the allegations in this

13   paragraph.

14                                    **JURISDICTION AND VENUE**

15     9.      Responding to Paragraph 9 of the Complaint, CA admits that it acquired Wily

16   Technology, Inc. ("Wily"), and that it has succeeded to all of Wily's rights and liabilities.

17   Further answering, CA states that this paragraph states legal conclusions for which no response

18   is necessary.  To the extent a response is deemed necessary, CA denies the remaining allegations

19   in this paragraph.

20     10.     Responding to Paragraph 10 of the Complaint, CA states that this paragraph states

21   legal conclusions for which no response is necessary.  To the extent a response is deemed

22   necessary, CA denies the allegations.

23     11.     Responding to Paragraph 11 of the Complaint, CA admits the allegations in this

24   paragraph.

25     12.     Responding to Paragraph 12 of the Complaint, CA states that this paragraph states

26   legal conclusions for which no response is necessary.  To the extent a response is deemed

27   necessary, CA denies the allegations.

28   //

1

<u>**FACTS**</u>

2

**A.      <u>CA's Acquisition of Wily Technology</u>**

3

13.     Responding to Paragraph 13 of Complaint, CA admits that both Bansal and

4

Sunkara were at one time employed by Wily.  CA admits that Bansal began working for Wily in

5

March 2005.  CA denies that Sunkara began working for Wily in March 2005.  CA denies each

6

and every allegation not expressly admitted.

7

14.     Responding to Paragraph 14 of the Complaint, CA admits the allegations in this

8

paragraph.

9

15.     Responding to Paragraph 15 of the Complaint, CA admits the allegations in this

10

paragraph.

11

16.     Responding to Paragraph 16 of the Complaint, CA admits the allegations in this

12

paragraph.

13

**B.      <u>Founding of AppDynamics</u>**

14

17.     Responding to Paragraph 17 of the Complaint, CA denies the allegations in this

15

paragraph.

16

18.     Responding to Paragraph 18 of the Complaint, CA admits that, on or about March

17

7, 2008, Bansal resigned from CA.  CA denies that Bansal founded AppDynamics after his

18

resignation from CA.  CA lacks knowledge or information sufficient to form a belief as to the

19

remainder of the allegations in this paragraph, and therefore denies them.

20

19.     Responding to Paragraph 19 of the Complaint, CA admits that Sunkara resigned

21

from CA in June 2008.  CA denies the remaining allegations in this paragraph.

22

20.     Responding to Paragraph 20 of the Complaint, CA denies the allegations in this

23

paragraph.

24

21.     Responding to Paragraph 21 of the Complaint, CA denies the allegations in this

25

paragraph.

26

//

27

//

28

//

-4-

## **CLAIMS FOR RELIEF**

### **CLAIM ONE:  DECLARATION OF NO BREACH OF CONTRACT**

22.     Responding to Paragraph 22 of the Complaint, CA restates and incorporates its answers to paragraphs 1 through 21 of the Complaint as if fully set forth herein.

23.     Responding to Paragraph 23 of the Complaint, CA admits the allegations in this paragraph.

24.     Responding to Paragraph 24 of the Complaint, CA admits the allegations in this paragraph but alleges that the paragraph does not set forth all of CA's contentions in this case.

25.     Responding to Paragraph 25 of the Complaint, CA denies the allegations in this paragraph.

26.     Responding to Paragraph 26 of the Complaint, CA denies the allegations in this paragraph.

27.     Responding to Paragraph 27 of the Complaint, CA denies the allegations in this paragraph.

28.     Responding to Paragraph 28 of the Complaint, CA admits the allegations in this paragraph.

29.     Responding to Paragraph 29 of the Complaint, this paragraph does not require a response from CA.  To the extent a response is required, CA denies the allegations in this paragraph.

### **CLAIM TWO:  DECLARATION OF NO MISAPPROPRIATION OF TRADE SECRETS**

30.     Responding to Paragraph 30 of the Complaint, CA restates and incorporates its answers to paragraphs 1 through 29 of the Complaint as if fully set forth herein.

31.     Responding to Paragraph 31 of the Complaint, CA admits the allegations in this paragraph.

32.     Responding to Paragraph 32 of the Complaint, CA denies the allegations in this paragraph.

33.     Responding to Paragraph 33 of the Complaint, CA denies the allegations in this paragraph.

34.    Responding to Paragraph 34 of the Complaint, CA denies the allegations in this paragraph.

35.    Responding to Paragraph 35 of the Complaint, CA denies the allegations in this paragraph.

36.    Responding to Paragraph 36 of the Complaint, CA admits the allegations in this paragraph.

37.    Responding to Paragraph 37 of the Complaint, this paragraph does not require a response from CA.  To the extent a response is required, CA denies the allegations in this paragraph.

**CLAIM THREE:  DECLARATION OF NO BREACH OF FIDUCIARY DUTY AND NO**

**AIDING AND ABETTING BREACH OF FIDUCIARY DUTY**

38.    Responding to Paragraph 38 of the Complaint, CA restates and incorporates its answers to paragraphs 1 through 37 of the Complaint as if fully set forth herein.

39.    Responding to Paragraph 39 of the Complaint, CA admits the allegations in this paragraph.

40.    Responding to Paragraph 40 of the Complaint, CA denies the allegations in this paragraph.

41.    Responding to Paragraph 41 of the Complaint, CA denies the allegations in this paragraph.

42.    Responding to Paragraph 42 of the Complaint, CA admits the allegations in this paragraph.

43.    Responding to Paragraph 43 of the Complaint, this paragraph does not require a response from CA.  To the extent a response is required, CA denies the allegations in this paragraph.

//

//

//

//

1    **CLAIM FOUR:  DECLARATION OF NO BREACH OF LOYALTY AND NO AIDING AND**

2                                **ABETTING BREACH OF LOYALTY**

3          44.      Responding to Paragraph 44 of the Complaint, CA restates and incorporates its

4    answers to paragraphs 1 through 43 of the Complaint as if fully set forth herein.

5          45.      Responding to Paragraph 45 of the Complaint, CA admits the allegations in this

6    paragraph.

7          46.      Responding to Paragraph 46 of the Complaint, CA denies the allegations in this

8    paragraph.

9          47.      Responding to Paragraph 47 of the Complaint, CA denies the allegations in this

10   paragraph.

11         48.      Responding to Paragraph 48 of the Complaint, CA admits the allegations in this

12   paragraph.

13         49.      Responding to Paragraph 49 of the Complaint, this paragraph does not require a

14   response from CA.  To the extent a response is required, CA denies the allegations in this

15   paragraph.

16    **CLAIM FIVE:  DECLARATION OF NO INTERFERENCE WITH PROSPECTIVE**

17                                **ECONOMIC ADVANTAGE**

18         50.      Responding to Paragraph 50 of the Complaint, CA restates and incorporates its

19   answers to paragraphs 1 through 49 of the Complaint as if fully set forth herein.

20         51.      Responding to Paragraph 51 of the Complaint, CA admits the allegations in this

21   paragraph.

22         52.      Responding to Paragraph 52 of the Complaint, CA denies the allegations in this

23   paragraph.

24         53.      Responding to Paragraph 53 of the Complaint, CA denies the allegations in this

25   paragraph.

26         54.      Responding to Paragraph 54 of the Complaint, CA admits the allegations in this

27   paragraph.

28   //

55.     Responding to Paragraph 55 of the Complaint, this paragraph does not require a response from CA.  To the extent a response is required, CA denies the allegations in this paragraph.

**CLAIM SIX:  DECLARATION OF NO INTERFERENCE WITH EXISTING CONTRACTS**

56.     Responding to Paragraph 56 of the Complaint, CA restates and incorporates its answers to paragraphs 1 through 55 of the Complaint as if fully set forth herein.

57.     Responding to Paragraph 57 of the Complaint, CA admits the allegations in this paragraph.

58.     Responding to Paragraph 58 of the Complaint, CA denies the allegations in this paragraph.

59.     Responding to Paragraph 59 of the Complaint, CA denies the allegations in this paragraph.

60.     Responding to Paragraph 60 of the Complaint, CA admits the allegations in this paragraph.

61.     Responding to Paragraph 61 of the Complaint, this paragraph does not require a response from CA.  To the extent a response is required, CA denies the allegations in this paragraph.

**CLAIM SEVEN:  DECLARATION OF NO BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

62.     Responding to Paragraph 62 of the Complaint, CA restates and incorporates its answers to paragraphs 1 through 61 of the Complaint as if fully set forth herein.

63.     Responding to Paragraph 63 of the Complaint, CA admits the allegations in this paragraph.

64.     Responding to Paragraph 64 of the Complaint, CA admits the allegations in this paragraph.

65.     Responding to Paragraph 65 of the Complaint, CA denies the allegations in this paragraph.

//

1  66.  Responding to Paragraph 66 of the Complaint, CA denies the allegations in this
2  paragraph.

3  67.  Responding to Paragraph 67 of the Complaint, CA denies the allegations in this
4  paragraph.

5  68.  Responding to Paragraph 68 of the Complaint, CA admits the allegations in this
6  paragraph.

7  69.  Responding to Paragraph 69 of the Complaint, this paragraph does not require a
8  response from CA.  To the extent a response is required, CA denies the allegations in this
9  paragraph.

10  **CLAIM EIGHT:  DECLARATION OF NO UNFAIR COMPETITION OR UNFAIR BUSINESS**
11  **PRACTICES**

12  70.  Responding to Paragraph 70 of the Complaint, CA restates and incorporates its
13  answers to paragraphs 1 through 69 of the Complaint as if fully set forth herein.

14  71.  Responding to Paragraph 71 of the Complaint, CA admits the allegations in this
15  paragraph.

16  72.  Responding to Paragraph 72 of the Complaint**,** CA denies the allegations in this
17  paragraph.

18  73.  Responding to Paragraph 73 of the Complaint, CA denies the allegations in this
19  paragraph.

20  74.  Responding to Paragraph 74 of the Complaint, CA admits the allegations in this
21  paragraph.

22  75.  Responding to Paragraph 75 of the Complaint, this paragraph does not require a
23  response from CA.  To the extent a response is required, CA denies the allegations in this
24  paragraph.

25  //

26  //

27  //

28  //

CA'S ANSWER TO PLAINTIFFS' FIRST AMENDED COMPLAINT AND COUNTERCLAIM

**CLAIM NINE:  DECLARATION OF NO CONVERSION**

76.     Responding to Paragraph 76 of the Complaint, CA restates and incorporates its answers to paragraphs 1 through 75 of the Complaint as if fully set forth herein.

77.     Responding to Paragraph 77 of the Complaint, CA admits the allegations in this paragraph.

78.     Responding to Paragraph 78 of the Complaint, CA denies the allegations in this paragraph.

79.     Responding to Paragraph 79 of the Complaint, CA denies the allegations in this paragraph.

80.     Responding to Paragraph 80 of the Complaint, CA admits the allegations in this paragraph.

81.     Responding to Paragraph 81 of the Complaint, this paragraph does not require a response from CA.  To the extent a response is required, CA denies the allegations in this paragraph.

**CLAIM TEN:  DECLARATION OF NO UNJUST ENRICHMENT AND NO RESTITUTION**

82.     Responding to Paragraph 82 of the Complaint, CA restates and incorporates its answers to paragraphs 1 through 81 of the Complaint as if fully set forth herein.

83.     Responding to Paragraph 83 of the Complaint, CA admits the allegations in this paragraph.

84.     Responding to Paragraph 84 of the Complaint, CA denies the allegations in this paragraph.

85.     Responding to Paragraph 85 of the Complaint, CA denies the allegations in this paragraph.

86.     Responding to Paragraph 86 of the Complaint, CA admits the allegations in this paragraph.

87.     Responding to Paragraph 87 of the Complaint, this paragraph does not require a response from CA.  To the extent a response is required, CA denies the allegations in this paragraph.

**CLAIM ELEVEN:  DECLARATION OF NO CONSTRUCTIVE TRUST AND NO REPLEVIN**

88.     Responding to Paragraph 88 of the Complaint, CA restates and incorporates its answers to paragraphs 1 through 87 of the Complaint as if fully set forth herein.

89.     Responding to Paragraph 89 of the Complaint, CA admits the allegations in this paragraph.

90.     Responding to Paragraph 90 of the Complaint, CA admits the allegations in this paragraph.

91.     Responding to Paragraph 91 of the Complaint, this paragraph does not require a response from CA.  To the extent a response is required, CA denies the allegations in this paragraph.

**CLAIM TWELVE:  DECLARATION OF OWNERSHIP REGARDING APPDYNAMICS' APM PRODUCT AND SOURCE CODE**

92.     Responding to Paragraph 92 of the Complaint, CA restates and incorporates its answers to paragraphs 1 through 91 of the Complaint as if fully set forth herein.

93.     Responding to Paragraph 93 of the Complaint, CA admits the allegations in this paragraph.

94.     Responding to Paragraph 94 of the Complaint, CA denies the allegations in this paragraph.

95.     Responding to Paragraph 95 of the Complaint, CA denies the allegations in this paragraph.

96.     Responding to Paragraph 96 of the Complaint, CA admits the allegations in this paragraph.

97.     Responding to Paragraph 97 of the Complaint, this paragraph does not require a response from CA.  To the extent a response is required, CA denies the allegations in this paragraph.

//

//

//

CA'S ANSWER TO PLAINTIFFS' FIRST AMENDED COMPLAINT AND COUNTERCLAIM

**CLAIM THIRTEEN:  DECLARATION OF ENTITLEMENT TO ATTORNEYS' FEES AND COSTS FOR BAD FAITH CLAIM FOR MISAPPROPRIATION OF TRADE SECRETS**

98.     Responding to Paragraph 98 of the Complaint, CA restates and incorporates its answers to paragraphs 1 through 97 of the Complaint as if fully set forth herein.

99.     Responding to Paragraph 99 of the Complaint, CA denies the allegations in this paragraph.

100.     Responding to Paragraph 100 of the Complaint, CA denies the allegations in this paragraph.

101.     Responding to Paragraph 101 of the Complaint, CA denies the allegations in this paragraph.

102.     Responding to Paragraph 102 of the Complaint, CA denies the allegations in this paragraph.

103.     Responding to Paragraph 103 of the Complaint, CA admits that an actual and justiciable controversy exists between the Plaintiffs and CA.  CA denies the remaining allegations in this paragraph.

104.     Responding to Paragraph 104 of the Complaint, this paragraph does not require a response from CA.  To the extent a response is required, CA denies the allegations in this paragraph.

WHEREFORE, Defendant CA prays that Plaintiffs are not granted any of the relief requested in the Complaint, or otherwise, that the Complaint be dismissed with prejudice and that Defendant CA be granted its costs, including but not limited to its reasonable attorneys' fees.

//
//
//
//
//
//
//

CA'S ANSWER TO PLAINTIFFS' FIRST AMENDED COMPLAINT AND COUNTERCLAIM

**COUNTERCLAIM**

Defendant and Counter-Plaintiff, CA, INC. d/b/a CA TECHNOLOGIES ("CA"), as and for its Counterclaim against Plaintiffs and Counter-Defendants APPDYNAMICS, INC. ("AppDynamics"), JYOTI BANSAL ("Bansal") and BHASKAR SUNKARA ("Sunkara") (collectively, the "Plaintiffs"), alleges as follows:

**INTRODUCTION**

1.      In March and June 2008, respectively, Bansal and Sunkara left their employment at CA to operate AppDynamics.  Through AppDynamics, Bansal and Sunkara have competed directly with CA by, among other things, knowingly and willfully infringing CA's patents. Consequently, CA sued AppDynamics for patent infringement in the United States District Court for the Eastern District of New York in the case entitled *CA, Inc. d/b/a CA Technologies v. AppDynamics, Inc.*, 13-CV-02111(WFK) (WDW) (E. D. N. Y.) (the "New York Litigation").

2.      Discovery efforts in the New York Litigation revealed the conduct that is the basis for the counterclaim contained herein.

**PARTIES**

3.      CA, INC. d/b/a CA TECHNOLOGIES is a Delaware corporation with its headquarters and principal place of business located at One CA Plaza, Islandia, New York 11749.

4.      Defendant APPDYNAMICS is a corporation organized under the laws of Delaware, and maintains its principal place of business at 303 Second Street, North Tower, Eight Floor, San Francisco, California 94107.

5.      Defendant Bansal is a former CA software engineer and the founder and current CEO of AppDynamics.  Bansal, according to Plaintiffs' Complaint, is a California resident and lives in San Francisco, California.

6.      Defendant Sunkara is a former CA software engineer and a co-founder, current Chief Technology Officer and Vice-President of Product Management at AppDynamics. Sunkara, according to Plaintiffs' Complaint, is a California resident and lives in San Francisco, California.

**JURISDICTION**

7.     This Court has subject matter jurisdiction over CA's Counterclaim pursuant to 17 U.S.C. § 1, *et seq*. (the federal copyright law, "Copyright Act"); 28 U.S.C. § 1331 (federal question jurisdiction); 28 U.S.C. § 1338(a) (any act of Congress relating to patents, copyrights and trademarks); 28 U.S.C. § 1367 (supplemental jurisdiction); 28 U.S.C. §§ 2201 and 2202 (declaratory judgment); and the doctrines of ancillary and pendent jurisdiction.

8.     This Court has personal jurisdiction over the Plaintiffs in that the Plaintiffs reside and are doing business in California and within this district.

**VENUE**

9.     Venue for this Counterclaim is proper within this judicial district pursuant to at least 28 U.S.C. §§ 1391 and 1400.

**INTRADISTRICT ASSIGNMENT**

10.     As more particularly appears herein, this action is an Intellectual Property Action, which, pursuant to Civil L.R. 3-5(c), is assigned on a district-wide basis.

**FACTUAL BACKGROUND**

**A.     Overview and Summary**

11.     The allegations contained in this summary section are set forth in further detail below.  In 2006, CA purchased Wily Technologies ("Wily"), thereby becoming the market leader in the Application Performance Management (APM) industry.  Following the Wily acquisition, CA continued to invest heavily in the development and success of its APM business.

12.     As Wily employees, Bansal and Sunkara both had significant roles in the development of Wily's APM product and, upon becoming CA employees, both were involved in directing and coordinating the development of CA's APM products.

13.     Unbeknownst to CA, while still CA employees, Bansal and Sunkara secretly began to develop an APM product and business to compete directly with CA's APM products and business.  Their efforts included, but were not limited to, writing source code for the competing product and taking steps to form the competing company, AppDynamics.  Bansal and

Sunkara intentionally and fraudulently concealed their work and their plans for AppDynamics from CA.

14.     The actions of Bansal and Sunkara, and their subsequent operation of AppDynamics, violated obligations both had under agreements with CA, breached duties they owed under law and infringed CA's intellectual property rights.

**B.     CA Acquires Wily Technologies, its Leading APM Product, and its Key Software Engineers**

15.     With the exponential increase in the commercial use of the Internet, more and more businesses have come to rely on websites running web-based applications and other business-critical software to serve their customers and partners.  One downside to this increased reliance on Internet-based applications is that when applications crash, become unresponsive, or otherwise are not operating properly, businesses risk losing sales and/or customers, as well as harm to their reputation.  Thus, a need arose to monitor application performance and websites to ensure they are running properly, and if not, to precisely diagnose and fix problems either before they occurred, or soon thereafter.

16.     Wily was widely recognized as the inventor of APM, technology that permitted such monitoring of applications and websites.  Wily was a pioneer and driving innovative force in the APM field.

17.     Wily's flagship APM product, Introscope, was the first product to allow customers to monitor and manage the performance of their web applications in real time during production.

18.     Introscope was the market-leading APM tool for many years.

19.     CA purchased Wily in 2006 for approximately $375 million.

20.     CA acquired Introscope as part of the acquisition of Wily, and it remains today a significant generator of revenue for CA.

21.     As a result of acquiring Wily, CA immediately became a market leader in the APM industry.

22.     CA acquired all intellectual property associated with Wily and Introscope.

23.     CA also retained as employees many of Wily's software developers and engineers, including Bansal and Sunkara, who were directly involved in developing and implementing the design and architecture of Introscope.  At CA, Bansal was employed as a Principal Software Engineering and Sunkara was employed as a Senior Software Engineer.

24.     Upon information and belief, Bansal was directly involved in the design and architecture of several products at Wily prior to its acquisition by CA, including Introscope.

25.     Following CA's acquisition of Wily, Bansal was also involved in directing and coordinating projects for CA related to its APM line of products.

26.     Bansal was a principal architect of Introscope.

27.     Sunkara was a "Lead Engineer" at Wily involved in the technical development of Introscope.

28.     Upon information and belief, Sunkara was directly involved in the design and architecture of several products at Wily prior to its acquisition by CA, including Introscope.

29.     Sunkara was also involved in directing and coordinating projects for CA related to its APM line of products.

30.     In addition to Wily's intellectual property, CA acquired Wily's rights in its proprietary rights and invention agreements with its employees, which were essential to ensure the protection and preservation of CA's rights to the intellectual property it acquired from Wily.

31.     Since the acquisition, CA has invested millions of dollars and substantial time into its research, development, design and refinement of its products, including Introscope and other APM products.

32.     Through substantial investment of time and money, CA developed proprietary and confidential technical information used in connection with Introscope and other APM products.  This proprietary information includes, for instance, the design and technology best suited for the products, software code, including source code written for the products, fixes thereto, the performance capabilities, constraints and challenges for the product, as well as potential product development plans.

33.     This work constitutes trade secrets, and has allowed, and continues to allow, CA to design, implement, customize, service, and sell Introscope and other APM products in an effective and cost-efficient manner.

34.     Together with the above-described technical trade secrets, CA developed a substantial amount of valuable, proprietary, and confidential information regarding customers of Introscope and other APM products, including, for instance:  the unique needs, attitudes, constraints, and experiences of each customer; the features and specifications of the products and systems that each customer has purchased or needs; the terms of agreements between CA and their customers; and the identities and preferences of key personnel at each customer.

35.     These trade secrets have allowed, and continue to allow, CA to optimize their offerings, contracts, pricing, performance, marketing and sales, and to maintain good relationships with their customers.

36.     CA also developed a substantial amount of confidential, proprietary, and valuable information regarding the skill levels, experience, specialties, performance attributes, compensation levels, and attitudes of their employees.

37.     These trade secrets have enabled, and continue to enable, CA to maintain their employee base, and to allocate those employees who are best suited and/or most experienced to particular customers and projects, all of which enhances CA's technology, products, performance, and relationships with their customers and prospective customers.

38.     CA has exercised reasonable efforts to preserve the secrecy of the above-described trade secrets.  Among other measures, CA's employees, in consideration for their employment and receipt of confidential information, are required to sign agreements not to disclose to any unauthorized person, or to use for any unauthorized purpose, any secret, confidential or proprietary information connected with CA's businesses.

**C.**     **Bansal's and Sunkara's Proprietary Rights and Invention Agreements Secured CA's Exclusive Rights to Works Created By Them During Their Employment and Protect CA's Intellectual Property From Improper Use and Disclosure**

39.     Bansal and Sunkara both entered into valid and enforceable Proprietary Rights and Invention Agreements with Wily (hereinafter "the Agreements").[1]  See Exhibits 1 and 2, attached hereto.

40.     Bansal and Sunkara accepted their positions with Wily subject to the terms and provisions of the Agreements.

41.     The Agreements were designed to preserve and protect Wily, and now CA as successor-in-interest, from improper theft, use, and disclosure of its proprietary and confidential information, and to grant Wily, and now CA, ownership of works by its employees.

42.     In particular, the Agreements contain the following agreement of Bansal and Sunkara:

> At all times during my employment and for a period of five (5) years thereafter, I will hold in strictest confidence and will not disclose, use, lecture upon or publish any of the Company's Proprietary Information (defined below), except as such disclosure, use, or publication be required in connection with my work for the Company, or unless an officer of the Company expressly authorizes such in writing.  I will obtain Company's written approval before publishing or submitting for publication any material (written, verbal, or otherwise) that relates to my work at Company and/or incorporates any Proprietary Information.

43.     The Agreements define "Proprietary Information" as:

> [A]ny and all confidential and/or proprietary knowledge, data or information of the Company.  By way of illustration, but not limitation, "**Proprietary Information**" includes (a) trade secrets, inventions, mask works, ideas, processes, formulas, source and object codes, data, programs, other works of authorship, know-how, improvements, discoveries, developments, designs and techniques (hereinafter collectively referred to as "**Inventions**"); and (b) information regarding plans for research, development,

---

[1] Although the Agreements were executed while Bansal and Sunkara were employed by Wily, the Agreements are enforceable by "any successor-in-interest or other assignee," including CA.

new products, marketing and selling, business plans, budgets and unpublished financial statements, licenses, prices, costs, suppliers and customers; and (c) information regarding the skills and compensation of other employees of the company.

44.     The Agreements further define "Proprietary Rights" and "Works for Hire" as follows:

**"Proprietary Rights"** shall mean all trade secret, patent, copyright, mask work and other intellectual property rights throughout the world.

**"Works for Hire**."  [A]ll original works of authorship which are made by me (solely or jointly with others) within the scope of my employment and which are protectable by copyright are "works made for hire," pursuant to United States Copyright Act (17 U.S.C., Section 101).

45.     Pursuant to the Agreements, all Proprietary Information, Proprietary Rights, Inventions, and Works for Hire created by Bansal and Sunkara while working for CA are owned by CA.  Bansal and Sunkara agreed as follows:

I hereby assign to the Company any rights I may have or acquire in such Proprietary Information and recognize that all Proprietary Information shall be the sole property of the Company and its assigns.

***

I hereby assign and agree to assign in the future (when any such Inventions or Proprietary Rights are first reduced to practice or first fixed in a tangible medium, as applicable) to the Company all my right, title, and interest, in and to any and all Inventions (and all Proprietary Rights with respect thereto) whether or not patentable or registrable under copyright or similar statutes, made or conceived or reduced to practice or learned by me, either alone or jointly with others, during the period of my employment with the Company.

46.     In addition to establishing CA's ownership rights, the Agreements required Bansal and Sunkara to disclose all projects they were working on at CA so that CA could investigate, assess, and protect its rights under the Agreements.  In the Agreements, Bansal and Sunkara agreed:

-19-

> During the period of my employment and for six (6) months after termination of my employment with the Company, I will promptly disclose to the Company fully and in writing any and all Inventions authored, conceived or reduced to practice by me, either alone or jointly with others.

47.     In the Agreements, Bansal and Sunkara also agreed that for a period of five (5) years after leaving CA, neither would "disclose, use, lecture upon or publish any of [CA's] Proprietary Information."

48.     Further, in the Agreements, Bansal and Sunkara agreed that, if and to the extent that Bansal and Sunkara believed that any work they did while at CA did not belong to CA, they affirmatively agreed that they were mandated to disclose such work to CA, and to "provide to [CA] in writing all evidence necessary to substantiate that belief."

49.     In the Agreements, Bansal and Sunkara also agreed to keep records of all Proprietary Information and Inventions and to make that information available to CA.  Bansal and Sunkara agreed to the following:

> I agree to keep and maintain adequate and current records (in the form of notes, sketches, drawings and in any other form that may be required by the Company) all Proprietary Information developed by me and all Inventions made by me during the period of my employment at the Company, which records shall be available to and remain the sole property of the Company at all times.

50.     The Agreements also prohibited Bansal and Sunkara from competing with CA while still employed by CA, or to solicit CA employees for one year after their employment ended.  Bansal and Sunkara agreed to the following:

> I agree that during the period of my employment with the Company I will not, without the Company's written consent, engage in any employment or business activity which is competitive with, or would otherwise conflict with, my employment by the Company.  I further agree that for the period of my employment by the Company and for one (1) year after the date of termination of my employment by the Company I will not, either directly or through others, solicit any employee, independent contractor or consultant of the company to terminate his or her relationship with the Company in order to become an employee,

consultant, or independent contractor to or for any other person or entity.

51.     Sunkara executed his Proprietary Rights and Inventions Agreement on February 24, 2005, and has been bound by the obligations in that agreement since at least that time.

52.     Bansal executed his Proprietary Rights and Inventions Agreement on March 21, 2005, and has been bound by the obligations in that agreement since at least that time.

53.     The Agreements acknowledge that both Bansal and Sunkara had a superiority of knowledge, as compared to CA, with respect to their work that was done while at CA.

54.     The Agreements include contractual obligations to ensure that Bansal and Sunkara promptly disclose their work to CA, and to not improperly disclose and/or use CA's trade secrets and proprietary and confidential information.

55.     Bansal and Sunkara assumed the foregoing contractual obligations as a condition of their employment with CA.

56.     Absent a duty on the part of Sunkara and Bansal to disclose to CA any Proprietary Information and Inventions resulting, in whole or in part, from their work, CA's right to receive the benefit of the Agreements would be destroyed or significantly impaired.

57.     A reasonable person in the position of CA would be justified in understanding that the Agreements included a duty on the part of Sunkara and Bansal to disclose to CA any Proprietary Information and Inventions resulting, in whole or in part, from their work.

58.     Under the Agreements, CA was dependent on Bansal and Sunkara to provide truthful and forthright information and advice regarding all aspects of their work done while employed by CA.

59.     The Agreements established a relationship of trust and confidence between the parties.

60.     The Agreements required Bansal's and Sunkara's full disclosure of information to CA about work done during their employment with CA.

61.     During their employment, Bansal and Sunkara were provided with substantial access to CA's confidential and proprietary information.

62.     As part of their employment, Bansal and Sunkara were entrusted with CA's confidential and proprietary information in order to create and maintain CA's software applications for a given product or family of products.

63.     During their employment, Bansal and Sunkara were in a superior position to know and understand the scope and extent of the projects they were working on while at CA, and CA reasonably relied on the trust and confidence placed in Bansal and Sunkara to not disclose that proprietary information.

64.     As a result of the trust confided in Bansal and Sunkara by CA, and accepted by both Bansal and Sunkara under the Agreements, Bansal and Sunkara owed independent fiduciary duties to CA.  This fiduciary duty included the duty to disclose to CA full information about any work performed during their employment with CA relating to their employment with CA.

65.     CA and Wily performed all of their obligations under the Agreements.

**D.     <u>Bansal and Sunkara Developed a Competing APM Product While Working for CA, and Actively and Fraudulently Concealed It from CA for the Benefit of AppDynamics</u>**

66.     Bansal founded AppDynamics in January 2008, while he was still employed at CA.

67.     Bansal left CA in approximately March 2008.

68.     Sunkara left CA in approximately June 2008, and promptly joined AppDynamics.

69.     Bansal and Sunkara conceived of AppDynamics, and began development efforts for an APM product for AppDynamics, while still employed by and prior to leaving CA.

70.     In particular, Bansal and Sunkara began writing software for an APM product for AppDynamics in late 2007, while still employed by and prior to leaving CA.

71.     Upon information and belief, Bansal and Sunkara engaged in other efforts necessary to create and incorporate AppDynamics and to develop an APM product for AppDynamics prior to leaving CA.

72. Plaintiffs intentionally and fraudulently concealed the software development and other activities conducted by Bansal and Sunkara for the benefit of AppDynamics prior to leaving CA, and continued to conceal that information after Bansal and Sunkara left CA.

73. AppDynamics has had knowledge of Bansal's and Sunkara's contractual obligations to disclose to CA the development activities related to AppDynamics conducted by Bansal and Sunkara prior to their departure from CA and for six months after their departure from CA.

74. AppDynamics has or had knowledge of Bansal's and Sunkara's assignment to CA of ownership in and to all works created by them during their employment with CA, including with respect to the development activities related to AppDynamics conducted by Bansal and Sunkara prior to their departure from CA.

75. AppDynamics has or had knowledge of Bansal's and Sunkara's contractual obligations to not use or disclose the development activities related to AppDynamics conducted by Bansal and Sunkara prior to their departure from CA.

76. Bansal and Sunkara, with the intent to deceive CA concerning its rights, did not disclose to CA the research and development activities related to AppDynamics conducted by Bansal and Sunkara prior leaving CA.

77. Bansal and Sunkara did not at any time disclose to CA information in their possession affirmatively indicating that they had engaged in research and development activities related to AppDynamics prior to leaving CA.

78. As a result of the foregoing, Bansal and Sunkara have each breached their respective Agreements, and AppDynamics is legally responsible for those breaches, as described herein.

79. Upon information and belief, Bansal resigned his position at CA with the goal, in whole or in part, to build AppDynamics and to use his and Sunkara's development activities while still at CA for the commercial benefit of AppDynamics.

CA'S ANSWER TO PLAINTIFFS' FIRST AMENDED COMPLAINT AND COUNTERCLAIM

80.     Upon information and belief, all or part of the timeframe during which Bansal and Sunkara misappropriated CA's trade secrets and proprietary and confidential information, Bansal and/or Sunkara exercised substantial authority and control over AppDynamics.

81.     CA reasonably relied upon Bansal's and Sunkara's superior knowledge and expertise of their activities conducted prior to resigning from CA, and reasonably placed trust and confidence in Bansal and Sunkara, to CA's detriment.

82.     At all times, Plaintiffs have fraudulently concealed the facts giving rise to CA's causes of action regarding the research and development activities related to AppDynamics conducted by Bansal and Sunkara prior to resigning from CA.

83.     CA did not discover the existence of its claims against Plaintiffs until February 2014, during discovery in the New York Litigation.

84.     CA could not, by reasonable diligence, have discovered the facts giving rise to its claims before becoming aware of those claims as a result of discovery conducted in the New York Litigation.

85.     The foregoing conduct was undertaken by Bansal and Sunkara for the benefit of, and as agents and representatives of, AppDynamics.

86.     As a result of the conduct perpetrated by Plaintiffs upon CA, CA has been denied ownership of Bansal's and Sunkara's works created by them prior to leaving CA, and has been damaged in an amount to be determined at trial.

87.     As a result of the foregoing, Plaintiffs have been unjustly enriched at the expense of CA.

**E.      Plaintiffs Interfere With, and Induce Breaches of, CA's Agreements with Bansal and Sunkara**

88.     The valid and enforceable Agreement between Bansal and CA required Bansal, among other things, to disclose and assign to CA the research and development activities related to AppDynamics conducted by him prior to leaving CA.

89.     The valid and enforceable Agreement between Bansal and CA required Bansal, during his employment and for six months after his termination with CA, to disclose to CA fully

and in writing any and all Inventions authored, conceived of or reduced to practice by Bansal, either alone or jointly with others.

90.     AppDynamics was aware of the Agreement between Bansal and CA.

91.     AppDynamics participated in, induced, and/or aided and abetted Bansal's breach of his fiduciary and contractual obligations to CA.

92.     AppDynamics provided resources and assistance to Bansal, including funding, with respect to Bansal's breach of his Agreement.

93.     As a result of AppDynamics' conduct, CA has, among other things, been denied ownership of the works and/or intellectual property created by Bansal in breach of Bansal's Agreement (including any derivative works related thereto), and has been damaged in an amount to be determined at trial.

94.     Bansal and AppDynamics participated in, induced, and/or aided and abetted Sunkara's breach of his fiduciary and contractual obligations to CA.

95.     The valid and enforceable Agreement between Sunkara and CA required Sunkara, among other things, to disclose and assign to CA the research and development activities related to AppDynamics conducted by Sunkara prior to leaving CA.

96.     The valid and enforceable Agreement between Sunkara and CA required Sunkara, during his employment and for six months after his termination with CA, to disclose to CA fully and in writing any and all Inventions authored, conceived of or reduced to practice by Sunkara, either alone or jointly with others.

97.     AppDynamics and Bansal were aware of the Agreement between Sunkara and CA.

98.     Upon information and belief, Bansal, acting within the course and scope of his role as the CEO of AppDynamics, communicated with, and provided knowledge and assistance to, Sunkara regarding the research and development activities related to AppDynamics conducted by Sunkara prior to leaving CA.

99.     Upon information and belief, Sunkara provided Bansal and AppDynamics with source code and other proprietary information owned by CA in order to facilitate the development of AppDynamics' product.

100.     Sunkara's provision of CA's proprietary information to Bansal and AppDynamics was in direct violation of Sunkara's Agreement with CA.

101.     Upon information and belief, Bansal and AppDynamics intentionally and knowingly induced and encouraged Sunkara's breach of his fiduciary and contractual obligations to CA with the promise of employment with AppDynamics and other benefits.

102.     As a result of Bansal's and AppDynamics' conduct, CA has, among other things, been denied ownership of the works and/or intellectual property created by Sunkara prior to leaving CA in breach of Sunkara's Agreement (including any derivative works related thereto), and has been damaged in an amount to be determined at trial.

103.     Upon information and belief, Plaintiffs have aided and abetted other CA employees and/or former CA employees in the breach of their fiduciary and contractual obligations to CA.

104.     Upon information and belief, Plaintiffs have communicated with other former employees of CA now employed with AppDynamics, including, Hatim Shafique, Todd Rader, Bruce McCready, Rajpal Sodhi, Joel Fortune, John Garbarino, David Eastwood, Christine Souza, and Abhi Sawabt about coming to work for AppDynamics.

**F.     AppDynamics Improperly Markets Its Product to CA Customers**

105.     CA maintains long-standing relationships with its customers as a result of the time, effort, and expense expended to implement CA's APM products in a customer's systems. Consequently, CA enjoys continued business and cooperative relationships with its customers for the sale and licensing of its APM products.

106.     AppDynamics has been directly and aggressively targeting CA's existing and prospective APM customers.  See e.g., Exhibit 3 (attached hereto) ("CA Wily is dead (or is looking much like a zombie these days) . . . And we're taking business from them . . . .); Exhibit 4.

1      107.    AppDynamics competes and has competed directly with CA's APM products, on

2  which all of the above-listed former CA employees worked in various engineering, marketing, or

3  sales capacities.

4      108.    AppDynamics' unauthorized use of CA's proprietary information and trade

5  secrets has resulted in actual interference with CA's prospective economic advantage and

6  relations, including beneficial economic relations with CA's existing and prospective customers

7  for AppDynamics.

8      109.    AppDynamics' unfair practices have harmed longstanding customer relationships

9  and have resulted in lost business for CA.

10  **FIRST CAUSE OF ACTION**

11  **(Declaration of Ownership and Authorship (17 U.S.C. §§ 101, et seq.))**

12      110.    CA hereby repeats and realleges each and every allegation contained in

13  Paragraphs 1 through 109 as if fully set forth herein.

14      111.    CA owns the work undertaken by Bansal and Sunkara while still employed by

15  CA, and any derivative works related to those efforts.

16      112.    As a result of Bansal's and Sunkara's Agreements, CA is the lawful owner and

17  sole author of the subject development efforts.

18      113.    As a result of Bansal's and Sunkara's work made for hire, CA is the lawful owner

19  and sole author of the subject development efforts in accordance with 17 U.S.C. § 201(b).

20      114.    AppDynamics, Bansal, and/or Sunkara, and any of them, has and have not sought,

21  and none has received, a license or other permission from CA to use the results of Bansal's and

22  Sunkara's development efforts prior to leaving CA or any development efforts subsequent to

23  leaving CA that constitute derivative works of Bansal's and Sunkara's development efforts prior

24  to leaving CA.

25      115.    By reason of the foregoing, there exists between the parties an actual and

26  justiciable controversy concerning whether AppDynamics or CA is the lawful owner and author

27  of the works.

28

116.    Accordingly, CA seeks, pursuant to the Agreements and 28 U.S.C. §§ 2201 and 2202, a declaration and judgment from this Court that CA is the lawful owner and sole author of the work created by Bansal and Sunkara while employed by CA, and any derivative works related to those efforts.

## SECOND CAUSE OF ACTION

### (Breach of Fiduciary Duty and Aiding and Abetting a Breach of Fiduciary Duty)

117.    CA hereby repeats and realleges each and every allegation contained in Paragraphs 1 through 116 as if fully set forth herein.

118.    Bansal and Sunkara had a contractual and fiduciary duty to CA to act in good faith and in the best interests of CA.

119.    Following CA's acquisition of Wily, CA continued to develop Introscope.  CA released several new versions of the software, each of which contained modifications to the original source code as received in the Wily acquisition.  Bansal and Sunkara were entrusted by CA with the responsibility of advancing Introscope and CA's APM products in the APM market.

120.    Bansal and Sunkara were required to avoid self-dealing and diversion of CA's property and assets, to perform faithfully and diligently their employment duties, and they were prohibited from usurping business opportunities from CA.

121.    Bansal and Sunkara failed to perform their duties in a skillful, careful, loyal, and diligent manner; on the contrary, they acted for their own personal benefit and the benefit of third parties, to the detriment of CA.

122.    Bansal and Sunkara breached their fiduciary duties to CA by, among other things, purporting to act on behalf of CA, when in reality they were acting in furtherance of their own self-interest, exploiting their positions and CA's knowledge to create their own company that would compete with CA; furthering their self-interest on CA's time and using CA resources to do so; covertly soliciting and/or inducing employees of CA to terminate their employment at CA to join a competitor; stealing CA's corporate opportunities for themselves; failing to disclose ideas, concepts, and inventions that they were obligated to disclose to CA; and engaging in activities that created a conflict of interest with their employment with CA.

123.     Further, with knowledge that Bansal's and Sunkara's acts were in breach of their fiduciary and contractual duties to CA, AppDynamics aided and abetted their breaches by providing substantial assistance and encouragement to Bansal and Sunkara.  This assistance included, but was not limited to, funding resources and providing assistance to develop AppDynamics' APM product; providing employment and other benefits to join AppDynamics; and helping to conceal Bansal's and Sunkara's wrongful actions from CA.

124.     AppDynamics' actions were a substantial factor in causing harm to CA.

125.     Upon information and belief, AppDynamics knowingly induced and participated in Bansal's and Sunkara's breach of their fiduciary duties.

126.     Upon information and belief, Plaintiffs have aided and abetted other CA employees and/or former CA employees to breach their fiduciary and contractual obligations to CA.

127.     Because of Plaintiffs' actions, CA has been damaged in an amount to be proven at trial, and Plaintiffs have been unjustly enriched in an amount to be proven at trial.

128.     In addition, unless Plaintiffs are restrained from continuing to market and sell the products created by using the works that belong to CA and using property and ideas owned by CA, CA will be permanently and irreparably harmed.

129.     Plaintiffs' conduct was willful, malicious, fraudulent, and in conscious disregard of CA's rights and interests and, upon information and belief, was undertaken with the intent to injure CA's property and legal rights.  Accordingly, an award of exemplary damages is justified.

### THIRD CAUSE OF ACTION

### (Breach of the Duty of Loyalty)

130.     CA hereby repeats and realleges each and every allegation contained in Paragraphs 1 through 129 as if fully set forth herein.

131.     Throughout their employment at CA, Bansal and Sunkara had relationships with CA that gave rise to a duty of loyalty.

132.     While employed at CA, Bansal and Sunkara breached their duties of loyalty by working for AppDynamics; purporting to act on behalf of CA when in reality they were acting in

1  furtherance of AppDynamics; upon information and belief, communicating with actual and

2  prospective customers and investors on behalf of AppDynamics; and engaging in activities that

3  created a conflict of interest with their employment at CA.

4      133.   As a result, CA has been damaged in an amount to be proven at trial.

5      134.   Bansal's and Sunkara's conduct was willful, malicious, fraudulent, and in

6  conscious disregard of CA's rights and interests and, upon information and belief, was

7  undertaken with the intent to injure CA's property and legal rights.  Accordingly, an award of

8  exemplary damages is justified.

9                    **FOURTH CAUSE OF ACTION**

10                       **(Breach of Contract)**

11      135.   CA hereby repeats and realleges each and every allegation contained in

12  Paragraphs 1 through 134 as if fully set forth herein.

13      136.   Bansal and Sunkara separately entered into valid and enforceable Agreements

14  with CA.

15      137.   The Agreements entered into with CA expressly required Bansal and Sunkara to

16  hold as confidential all CA proprietary information and trade secrets.  Further, the Agreements

17  required Bansal and Sunkara to disclose proprietary information and inventions to CA, which

18  inventions were assigned to CA.

19      138.   Bansal and Sunkara breached their obligations under the Agreements by, *inter*

20  *alia*, using and/or disclosing CA proprietary information and trade secrets without permission or

21  authorization in the development, implementation, marketing, and sale of AppDynamics'

22  competing products; Bansal's and Sunkara's improper use of works that have been assigned to

23  CA; soliciting and hiring former CA employees; and engaging in employment and/or business

24  activities for and on behalf of AppDynamics during the period of their employment with CA

25  without CA's express written consent.

26      139.   CA and Wily performed all of their obligations under the Agreements.

27      140.   As a result of these breaches, CA has been damaged in an amount to be proven at

28  trial.

**FIFTH CAUSE OF ACTION**

**(Breach of Good Faith and Fair Dealing)**

141.    CA hereby repeats and realleges each and every allegation contained in Paragraphs 1 through 140 as if fully set forth herein.

142.    The Agreements between CA, Bansal and Sunkara are valid and enforceable contracts which contain an implied covenant of good faith and fair dealing.

143.    CA and Wily performed all of their obligations under the Agreements.

144.    By engaging in the conduct described above, Bansal and Sunkara have violated the covenant of good faith and fair dealing contained in their respective agreements with CA.

145.    Bansal's and Sunkara's actions described herein demonstrate more than honest mistakes, bad judgment or negligence.  Their actions were conscious and deliberate acts.

146.    Bansal's and Sunkara's actions frustrated the actual benefits of the Agreements.

147.    As a result of these breaches, CA has been damaged in an amount to be proven at trial.

**SIXTH CAUSE OF ACTION**

**(Misappropriation of Trade Secrets -- California's Uniform Trade Secrets Act. (Civ. Code, § 3426 et seq.))**

148.    CA hereby repeats and realleges each and every allegation contained in Paragraphs 1 through 147 as if fully set forth herein.

149.    CA has enjoyed, and continues to enjoy, an advantage over its existing and prospective competitors in the design, development, production, service, marketing, and sale of products and services because of the above-described confidential and proprietary information, including design documentation, plans and software code for the Introscope products, as well as CA's confidential customer and employee information.

150.    CA has made reasonable efforts under the circumstances to preserve the confidentiality of its information.  Such information derives independent economic value from not being generally known to the public or to other persons who can obtain economic value from their disclosure or use.  Accordingly, the above-described information constitutes "trade secrets."

1    151.   CA's employees, including Bansal and Sunkara, have been, and continue to be,

2    under a duty to keep CA's proprietary and confidential information secret, and not to use or

3    disclose such information other than for the benefit of CA and with CA's authorization.

4    Plaintiffs knew or should have known that they had acquired such information under

5    circumstances giving rise to a duty to maintain its secrecy or limit its use, and/or derived from or

6    through a person who has such a duty and/or through improper means.  Nevertheless, Plaintiffs

7    disclosed and/or used this information, at least at AppDynamics and in AppDynamics' products,

8    in a manner adverse to CA and all without the express or implied consent of CA.

9    152.   Plaintiffs obtained the proprietary and confidential information described above

10   directly or indirectly from CA and not from generally available information or from the

11   Plaintiffs' own independent research and efforts.

12   153.   Plaintiffs' actions constitute misappropriation of CA's trade secrets pursuant to

13   Cal. Civ. Code 3426.4, *et seq*.

14   154.   Each of the acts of misappropriation was done willfully and maliciously by

15   Plaintiffs, entitling CA to exemplary damages.

16   155.   As a direct and proximate result of Plaintiffs' misappropriation of CA's trade

17   secrets, all Plaintiffs have been unjustly enriched, and CA has sustained damages in an amount to

18   be proven at trial.

19   156.   CA also has suffered irreparable harm as a result of the Plaintiffs' actions, and

20   will continue to suffer irreparable injury that cannot be adequately remedied at law unless all

21   Plaintiffs, and their officers, agents and employees, and all other persons acting in concert with

22   them, are enjoined from engaging in any further acts of misappropriation.

23   157.   CA is entitled to attorneys' fees pursuant to Cal. Civ. Code 3426.4.

24   **SEVENTH CAUSE OF ACTION**

25   **(Intentional Interference with Actual and Prospective Economic Advantage)**

26   158.   CA hereby repeats and realleges each and every allegation contained in

27   Paragraphs 1 through 157 as if fully set forth herein.

28

CA'S ANSWER TO PLAINTIFFS' FIRST AMENDED COMPLAINT AND COUNTERCLAIM

159.    Economic business relationships exist between CA and their actual and prospective customers.  These actual and prospective relationships involve sales of hundreds of CA's APM products for millions of dollars.  In addition, CA maintains cooperative relationships with its existing customers that involve the development of specific, unique technologies to fit CA's customers' needs.

160.    Bansal and Sunkara are and were aware of the existence of these relationships between CA and their actual and prospective customers as a result of their employment with CA. AppDynamics is and was aware of the existence of these relationships between CA and their actual and prospective customers as a result of Bansal, Sunkara and numerous other former CA sales personnel who have worked and now work at AppDynamics.

161.    Plaintiffs have engaged in wrongful conduct designed to interfere with or disrupt CA's relationships with their actual and prospective customers, including by, among other things, using and/or disclosing CA's trade secrets and proprietary information; upon information and belief, using and disclosing confidential and proprietary CA technical, sales, marketing, and customer information wrongfully acquired from CA; and misrepresenting the nature, performance, quality, and capabilities of CA's technology, products, and services, as well as the direction of CA's businesses and strengths of their prospects.

162.    The actions of Plaintiffs were intentional and carried out for the purpose of disrupting CA's relationships with their actual and prospective customers.

163.    As a result of the intentional interference by Plaintiffs with CA's prospective economic advantage, CA's relationships with their actual and prospective customers were in fact disrupted and CA has been damaged in an amount to be proven at trial.

164.    Plaintiffs' actions have permanently and irreparably harmed CA.  CA is therefore entitled to injunctive relief.

165.    The acts and conduct of Plaintiffs to disrupt CA's prospective economic advantage were carried out willfully, fraudulently, maliciously, and with wanton disregard of CA's rights, thereby entitling CA to punitive damages.

### EIGHTH CAUSE OF ACTION

#### (Intentional Interference with Contract)

166.   CA hereby repeats and realleges each and every allegation contained in Paragraphs 1 through 165 as if fully set forth herein.

167.   Sunkara, Bansal and AppDynamics all were aware of CA's contracts with its former employees because, *inter alia*, Bansal and Sunkara signed the Agreements as a condition of employment with Wily and/or CA, and were aware that former employees would have signed agreements as well.

168.   Bansal and Sunkara intentionally interfered with the contracts between CA and its employees by, among other things, using and disclosing CA's proprietary information without CA's permission or authorization in the development, manufacture and sale of AppDynamics' competing products; Bansal's and Sunkara's improper use of proprietary information and inventions made, conceived or reduced to practice during the period of their employment with CA and that, by operation of the Agreements, have been assigned to CA; using CA's proprietary information in the solicitation and hiring of former CA employees at AppDynamics; engaging in employment and/or business activities for and on behalf of AppDynamics during the period of their employment with CA and without CA's express written consent; covertly, and in a manner that hid their actions, soliciting and/or inducing CA's employees to leave the employ of CA during and within one year of their respective departures from CA; and/or soliciting the business of CA customers and clients for and on behalf of AppDynamics.

169.   On information and belief, Plaintiffs intentionally encouraged each other, as well as other former CA employees who had gone to work at AppDynamics, to use and disclose CA's proprietary information without CA's permission or authorization in the development, manufacture and sale of AppDynamics' competing products; to fail to assign to CA all right, title and interest in and to any and all inventions made or conceived or reduced to practice during the period of their employment with CA; to use CA's proprietary information to solicit and hire former CA employees at AppDynamics; to engage in employment and/or business activities for and on behalf of AppDynamics during the period of their employment with CA and without

CA's express written consent; to solicit and/or induce CA's employees to leave the employ of CA during and within one year of their respective departures from CA, while taking steps to hide their actions; and/or to solicit the business of CA's customers and clients for and on behalf of AppDynamics.

170.     Upon information and belief, AppDynamics provided substantial assistance and resources to Bansal and Sunkara to facilitate the foregoing conduct with knowledge that the foregoing conduct was in violation of the agreements between CA and its employees.

171.     As a proximate result of Plaintiffs' conduct, CA has suffered damages in an amount to be proven at trial.

172.     In addition, Plaintiffs' conduct has permanently and irreparably harmed CA.  CA is therefore entitled to injunctive relief.

173.     Plaintiffs' aforementioned conduct was willful, malicious, fraudulent, and in conscious disregard of CA's rights and interests and, on information and belief, was undertaken with the intent to injure CA's property and legal rights.  Accordingly, an award of punitive damages is justified.

## NINTH CAUSE OF ACTION

### (Unfair Competition under Cal. Bus. & Prof. Code § 17200)

174.     CA hereby repeats and realleges each and every allegation contained in Paragraphs 1 through 173 as if fully set forth herein.

175.     A business act or practice is "unfair" under California Business and Professions Code § 17200 *et seq.* if the reasons, justifications and motives of the alleged wrongdoer are outweighed by the gravity of the harm.

176.     Plaintiffs' actions discussed herein constitute unfair competition within the meaning of California Business and Professions Code § 17200 *et seq.*

177.     Plaintiffs have engaged in unlawful, unfair and fraudulent business acts. Plaintiffs knowingly engaged in unfair competition by, among other things, exploiting relationships with CA's employees to build a company to compete with CA; developing and furthering plans to build a competitive business while they were employed by CA; covertly

1   soliciting and/or inducing CA's employees to terminate their employment; stealing and

2   interfering with CA's prospective economic relations; and using ideas, concepts, and inventions

3   that Plaintiffs were obligated to disclose and assign to CA.

4        178.    Plaintiffs also knowingly engaged in unfair competition by making false and

5   misleading statements to CA's actual and prospective customers about the nature and direction

6   of CA's businesses and the quality, performance, features and cost of CA's technology, products

7   and services.  These actions deceive the public as to the true nature and quality of the products

8   marketed by Plaintiffs and the products marketed by CA.

9        179.    Plaintiffs knew that the conduct described above was improper and that they were

10   unlawfully, unfairly and fraudulently competing with CA when they sought to and did perform

11   the acts described above.

12        180.    The unfair practices are continuing in that Plaintiffs continue to interfere with

13   CA's prospective economic relations; to use ideas, concepts, and inventions that have been

14   assigned to CA and should have been disclosed to CA; and to make false and misleading

15   statements to CA's actual and prospective customers regarding CA's business, technology,

16   products and services.

17        181.    Plaintiffs actions discussed herein constitute unfair competition within the

18   meaning of California Business and Professions Code § 17200 *et seq.*

19        182.    CA has acted at all times with the utmost good faith.

20        183.    As a direct and proximate result of Plaintiffs' conduct, CA has suffered and will

21   continue to suffer lost sales and profits in an amount to be proven at trial.  In addition, CA has

22   suffered and continues to suffer injury to its business reputation and goodwill for which no

23   adequate remedy exists at law and for which CA is entitled to injunctive relief.

24        184.    As a direct and proximate result of this conduct, Plaintiffs have actually disrupted

25   CA's sales and customer relations and interfered with CA's employee relations, and unjustly

26   profited therefrom, while damaging CA.

27        185.    Accordingly, CA is entitled to restitution and the return of any ideas, concepts,

28   and inventions that have been assigned to CA and should have been disclosed to CA.

1    186.    CA is further entitled to preliminary and permanent injunctive relief that orders

2    Plaintiffs to cease this unfair competition, as well as disgorgement of Plaintiffs' profits

3    associated with this unfair competition.

### TENTH CAUSE OF ACTION

### (Conversion)

6    187.    CA hereby repeats and realleges each and every allegation contained in

7    Paragraphs 1 through 186 as if fully set forth herein.

8    188.    CA is the exclusive owner of its trade secret, confidential and proprietary

9    information, as well as many documents and computer files containing such information,

10   developed by Bansal and Sunkara while employed by CA (and any related works derived

11   therefrom).

12   189.    Pursuant to Cal. Labor Code § 2860, CA is the exclusive owner of the ideas and

13   code developed by Bansal and Sunkara while they were employed by CA.

14   190.    Pursuant to 17 U.S.C. § 201(b), CA is the lawful owner and sole author of

15   inventions and works created by Bansal and Sunkara while they were employees at CA.

16   191.    Plaintiffs conspired to wrongfully obtain possession of and convert to their own

17   use CA's documents, electronic communications, and computer files containing CA's trade

18   secret, proprietary and confidential information through the fraudulent scheme detailed herein.

19   192.    This wrongful conversion is causing irreparable injury to CA and should be

20   preliminarily and permanently enjoined.

### ELEVENTH CAUSE OF ACTION

### (Constructive Trust)

23   193.    CA hereby repeats and realleges each and every allegation contained in

24   Paragraphs 1 through 192 as if fully set forth herein.

25   194.    Through purposeful violation of trust and other wrongful acts as described herein,

26   AppDynamics has wrongfully gained property and benefits that rightfully belong to CA.

27   195.    As a result of AppDynamics' wrongful gains, upon information and belief,

28   AppDynamics has been unjustly enriched, and has unjustly retained that benefit.

1    196.    Equity demands that the property and benefits wrongfully gained by

2  AppDynamics, including all works taken from CA, and all derivatives thereof, and all materials

3  associated with the operation of AppDynamics, and all assets, earnings and other benefits

4  derived from AppDynamics, be held in constructive trust for CA, and that a proper accounting

5  should be delivered to CA.

6                          **TWELFTH CAUSE OF ACTION**

7                                  **(Replevin)**

8    197.    CA repeats and realleges each and every allegation contained in Paragraphs 1

9  through 196 as if fully set forth herein.

10    198.    CA is the legal owner of the proprietary information and inventions developed by

11  Bansal and Sunkara prior to leaving CA (and any related works derived therefrom).

12    199.    Pursuant to Cal. Labor Code § 2860, CA is the exclusive owner of the ideas and

13  code developed by Bansal and Sunkara while they were employed by CA.

14    200.    Pursuant to 17 U.S.C. § 201(b), CA is the lawful owner and sole author of

15  inventions and works created by Bansal and Sunkara while they were employees at CA.

16    201.    CA has an immediate and superior right of possession to the foregoing works.

17    202.    In or about March and April 2014, CA demanded that AppDynamics turnover the

18  foregoing works.

19    203.    As of the filing of CA's Answer and Counterclaim, AppDynamics has not agreed

20  to turnover the foregoing works to CA.

21    204.    Plaintiffs have exercised, and are continuing to exercise, an unauthorized

22  dominion over the foregoing works, to the exclusion of the CA's rights.

23    205.    Plaintiffs have converted to their own use and advantage the foregoing works, to

24  the exclusion of CA's rights.

25    206.    Upon information and belief, Bansal and Sunkara have transferred any purported

26  ownership interest in the foregoing works to AppDynamics.

27    207.    CA, as the owner of the foregoing works, is entitled to the return of the foregoing

28  works and all related materials.

1

**REQUEST FOR A JURY TRIAL**

2

208.    CA requests a jury trial of all issues in this action so triable.

3

**PRAYER FOR RELIEF**

4

WHEREFORE, CA prays for judgment against Plaintiffs as follows:

5

1.      For entry of judgment against Plaintiffs on all Claims for Relief;

6

2.      For a declaration that CA is the sole owner and sole author of the copyrightable

7

material in question;

8

3.      Pursuant to this Court's equity powers and 28 U.S.C. §2202, for an injunction

9

permanently prohibiting Plaintiffs and their officers, agents, servants, employees, and all persons

10

acting in concert with them, from directly or indirectly:

11

a.      Reproducing, distributing, publishing, placing in the market, or otherwise

12

using the copyrightable material, in whole or in part, or any derivative work thereof, in

13

any medium;

14

b.      Acquiring, using, possessing, disclosing, conveying, or communicating to

any person any of CA's trade secrets or other valuable proprietary information;

15

c.      Manufacturing, producing, offering for sale, selling, or conveying to any

16

person any products, systems or services produced, manufactured, or marketed using

17

CA's trade secrets or other valuable proprietary information;

18

d.      Inducing any current or former CA employee to breach any contract,

19

unfairly promote AppDynamics' technology using CA's proprietary marketing

20

information, disrupt any actual or prospective CA business relationship, or leave his or

21

her employment with CA by and through the use of CA's trade secrets and/or false and

22

misleading statements regarding CA;

23

4.      Pursuant to this Court's equity powers and 28 U.S.C. §2202, for an injunction

24

permanently requiring Plaintiffs and their officers, agents, servants, employees, and all persons

25

acting in concert with them, to return to CA all copies of CA's confidential, proprietary and trade

26

secret information in their possession, custody, and control, including without limitation, CA's

27

copyright protected software code, and to fully disclose, under penalty of perjury, the names and

28

CA'S ANSWER TO PLAINTIFFS' FIRST AMENDED COMPLAINT AND COUNTERCLAIM

whereabouts of all persons to whom, and all entities to which, such information has been further distributed by them;

5.    Pursuant to this Court's equity powers and 28 U.S.C. §2202, for an order providing for the impoundment, destruction, or other reasonable disposition of all complete or partial copies of the copyrightable protected material in the possession or control of AppDynamics, and a complete disclosure of the location of any such copies, including any put into products sold or distributed by AppDynamics;

6.    For compensatory damages in an amount according to proof;

7.    For an award of exemplary damages;

8.    For an award of punitive damages;

9.    For an award reflecting the amount by which Plaintiffs have been unjustly enriched;

10.    For costs of suit and reasonable attorneys' fees incurred herein;

11.    For post-judgment interest, pursuant to 28 U.S.C. § 1961, continuing until such judgment is paid, at the maximum rate allowed by law; and

12.    For such other relief as the Court deems just and proper.


Dated: July 18, 2014                     HOLLAND & KNIGHT LLP


                                         By:  /s/ Matthew P. Vafidis

                                         Attorneys for CA, INC.,
                                         d/b/a CA TECHNOLOGIES

1

## **CERTIFICATE OF SERVICE**

2          I hereby certify that on July 18, 2014, the foregoing document was served in accordance

3   with the Federal Rules of Civil Procedure and the Local Rules of the United States District

4   Courts for the Northern District of California:

5          GIBSON, DUNN & CRUTCHER LLP

6          Frederick Brown
           Gibson Dunn & Crutcher LLP
7          555 Mission Street
           Suite 3000
8          San Francisco, CA 94105
           415-393-8204
9          Email:  fbrown@gibsondunn.com

10         Josh A. Krevitt
           Gibson, Dunn & Crutcher
11         200 Park Avenue
           New York, NY 10166
12         212-351-4000
           Fax:  212-351-4035
13         Email:  jkrevitt@gibsondunn.com

14         Lindsey Elizabeth Haswell
           Gibson, Dunn & Crutcher
15         555 Mission Street
           Suite 3000
16         San Francisco, CA 94105
           415-393-8200
17         Fax:  415-393-8306
           Email:  lhaswell@gibsondunn.com

18
           *Attorneys for Plaintiffs*
19

20                                         /s/ Matthew P. Vafidis

21

22   #31455664_v1

23

24

25

26

27

28

CA'S ANSWER TO PLAINTIFFS' FIRST AMENDED COMPLAINT AND COUNTERCLAIM